UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| —————————————————— ) | |
| AMY MUNROE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | 22-11935-FDS |
| ) | |
| BOSTON MEDICAL CENTER, ) | |
| ) | |
| Defendant. ) | |
| —————————————————— ) | |

MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS

SAYLOR, C.J.

This is a dispute arising from a mandatory COVID-19 vaccination policy at a major

urban hospital.  Defendant Boston Medical Center ("BMC") adopted a policy in August 2021

that required all of its employees to be vaccinated against COVID-19, with provisions for

medical or religious exemptions under certain circumstances.  Plaintiff Amy Munroe, a staff

nurse, submitted a request for a religious exemption, but was denied.  BMC then terminated her

employment.

Plaintiff contends that her religion is an individualized form of "Paganism"; that "Mother

Nature" is her God; that she does not "participate in" Western medicine; and that vaccination

against COVID-19 violates her religious beliefs.  The complaint alleges that she was a victim of

religious discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et*

*seq.* and Mass. Gen. Laws ch. § 151B.

When a party professes to practice an entirely individualized and idiosyncratic religion, it

creates considerable challenges for courts (and employers).  Among other things, such an assertion may require a determination not only whether the beliefs in question are sincere, but whether they are religious beliefs at all.  As a general matter, religious views about medicine and medical practices are protected, but merely personal views are not.  And where a party professes individualized views that do not derive from any established church or faith, there is a substantial risk that she may be simply affixing a religious label to a set of personal beliefs in order to avoid complying with a requirement that she finds disagreeable.

Whether plaintiff's claim here actually involves a religious belief is, at best, a close call. Nonetheless, under the circumstances, the Court concludes that the complaint asserts sufficient facts to create a plausible basis for a claim that plaintiff's views are not simply personal or medical in nature, but religious.  The Court does not reach the question of whether the defendant hospital was required to accommodate a nurse who refused to be vaccinated against a contagious disease.

Accordingly, and for the following reasons, the motion for judgment on the pleadings will be denied.

## I.   Background

### A.   Factual Background

The following facts are as set forth in the pleadings unless noted otherwise.

#### 1.   Parties

Boston Medical Center ("BMC ") is a major hospital and medical center in Boston, Massachusetts.  (Compl. ¶ 4).

Munroe is a former employee of BMC.  She was employed as a staff nurse from October 13, 1998, until October 15, 2021.  (*Id.* ¶ 6).

    2.      **COVID-19**

COVID-19 is a contagious viral disease that can cause serious illness and death.  As of this writing, more than 1.2 million people in the United States have died from COVID-19.  CTRS. FOR DISEASE CONTROL AND PREVENTION, PROVISIONAL DEATH COUNTS FOR COVID-19 (2024) (last updated September 12, 2024).  COVID-19 is particularly dangerous for the elderly, and for people with lung conditions; heart disease; brain and nervous system conditions; diabetes; obesity; cancer; certain blood disorders; a weakened immune system; chronic kidney or liver diseases; and Down syndrome.  *See* MAYO CLINIC, COVID-19: WHO'S AT HIGHER RISK OF SERIOUS SYMPTOMS? (July 21, 2023).

The first known case of COVID-19 occurred in December 2019.  *See* WORLD HEALTH ORG., ARCHIVED: WHO TIMELINE – COVID-19 (Apr. 27, 2020).  By March 2020, it had spread into a worldwide pandemic.  *Id.*

    3.      **The COVID-19 Vaccination Policy**

In August 2021, BMC adopted a policy for COVID-19 immunization.  The policy stated in part as follows:  "COVID-19 vaccination is a requirement to work or volunteer or to be visiting personnel at BMC unless BMC approves a medical or religious exemption from the requirement for immunization."  (Compl. Ex. A at 1).  The policy included instructions for submitting a request for an exemption and advised that individuals who did not comply with the policy would be "subject to disciplinary action up to and including termination of their employment."  (*Id.* at 2).

    4.      **Plaintiff's Request for an Exemption**

On August 20, 2021, Munroe submitted a request for exemption from the vaccination policy because of her religious beliefs.  (Compl. Ex. B. at 1).  The request included a personal statement.  (*Id.* at 3-5).

Munroe's statement began by stating that she "was born into a Roman Catholic family," but after becoming an adult, she "realized that [she] was definitely not 'a Catholic.'"  (Compl. Ex. B at 4).  She later "formed [her] own thoughts but did not know what they amounted to as far as 'a religion.'"  (*Id.*).  Years later, she "realized that [her] beliefs lined up with the ancient religion Paganism."  (*Id.*).  She stated that "Pagans were peaceful Nature worshippers who believed in leaving others to do what they saw fit for themselves."  (*Id.*).

The statement went on to say:

> I believe that we are children of the Mother Earth which has [its] own spirit.  I believe in the Circle of Life.  Mother Nature is God and She is the most powerful force on Earth.  She created all things and all that She created is meant to be here on the Earth.  All things made by her, humans, animals, birds, insects, trees, flowers, rocks, unicellular organisms, parasites and viruses serve a purpose on the planet although that purpose may not be known to man.  She created humans with, amongst other things, innate senses, minds to think, and immune systems to protect.  It is my belief that wildfires, global warming, earthquakes, and the Covid pandemic itself are signs that she is angry with Her humans and wants to humble them, lest they forget that there can only be one center of a circle and that She is that center.  Man is not the center of the universe, nor the most powerful, nor any more or less important than other forms of life.  When Mother Nature delivers plague and widespread disease it is because the Earth is out of balance and needs to be restored to equilibrium.  It is evident to me that the more man attempts to dominate the earth the more he tries to control and interfere with natural occurrences, and the more he distances himself from nature the worse off he will be.

> Despite being a nurse, or maybe because of being one, I personally do not participate in western medicine the same way that most people do.  In accordance with my beliefs, I opt to rely on Mother Nature for natural remedies to heal my ailments, or to suffer through them until I am well.  Mother Nature will get me through them, or she won't.  When my time is up, and She comes for me, I will go without fear, knowing that I have completed the Circle of Life and will become part of the Earth again in a different form.

(*Id.* at 5).

She described her unwillingness to take the vaccine as follows:

> I have not been to a doctor in at least fifteen years.  I take no medications.  The first year that BMC mandated the flu shot I opted to wear a mask for the season.  That option has since been taken away.  I begrudgingly get the vaccine every year . . . .  At least the flu vaccine, unlike the Covid genetic therapy treatment, is made from a dead or weakened naturally occurring virus . . . .  A natural life suits

me and it is why I practice Paganism.  There may come a day when I will need the help of a doctor, but until that time comes, I will continue to practice natural healthcare at home that has served me well for three decades.

I had Covid very recently and the immune system that Mother Nature provided me with got me through it.  According to many studies I have better immunity than that which is provided by the vaccine.  I am no more a danger to our patients than a vaccinated person.  The CDC website states that the vaccine does not prevent disease or transmission of disease, that it lessens symptoms if one contracts the virus. I cannot defy Mother Nature, nor my innate instincts.  Taking a genetic therapy treatment that I am extremely fearful of, against my will and better judgment, as a perfectly healthy human being, to treat a naturally occurring virus, goes completely against beliefs that I have held most of my life . . . .

(*Id.*).[1]

In the accompanying "Religious Organization Statement Form," Munroe wrote that the "Name of [her] Religious Organization" was "Paganism"; that the "Religious Organization Address and Email" was "Outside";  and that the "Name of Religious Leader and Title" was "Mother Nature."  (*Id.* at 6).

In a letter dated September 24, 2021, John Hickey, senior director of employee and labor relations, wrote to Munroe that "[a]fter an initial review, the hospital has determined that additional information is required to aid in the evaluation of your request."  (Compl. Ex. D at 1).  The letter stated, "[w]e acknowledge that you are making a request based on your faith as a Roman Catholic, although you do not appear to be relying on the Catholic Church's most recent statements in support of COVID-19 vaccination."  (*Id.*).

On September 29, 2021, Munroe responded to the letter.  (Compl. Ex. C).  She stated, "I remain very disappointed that I spent seven hours preparing my religious exemption request, and

---

[1] Although Munroe indicated her belief that the COVID-19 vaccine represented "experimental genetic therapy," she apparently did not request vaccination by a method that did not involve mRNA technology.  (Compl. Ex. C at 3).

that you did not take the time to read it before sending me a Roman Catholic form letter.  It leads me to believe, despite the lip service, that the hospital does not care about its employees' religious beliefs and is not taking religious exemptions seriously."  (*Id.* at 4).  She also submitted an additional statement in support of her request:

> [M]y God is Mother Nature.  Submitting my body to the Covid 19 Vaccine, in my opinion an experimental genetic therapy, could not be more contrary to my religious beliefs that revolve around nature.  It is my sincerely held religious belief that man ought not to be altering the natural workings of the human body and [its] immune system.  We humans truly are a miracle in our natural design.  It should be noted that the vaccine is not the only medical treatment that I would decline.  I would never consent to chemotherapy, radiation, dialysis, artificial nutrition etc. In accordance with my religious beliefs, exemption from the vaccine is necessary.

(*Id.* at 3).  She also stated that she had "natural immunity" because she had recovered from COVID-19.  (*Id.* at 4).  And she proposed various workplace accommodations, largely focused on wearing a mask.  (*Id.*).

In a letter dated October 7, 2021, Hickey wrote to Munroe stating that if she wished to remain employed with BMC, she needed to comply with the hospital's vaccine requirement by October 15, 2021.  (Compl. Ex. E at 1).  The letter stated:

> After engaging in an interactive process with you, the hospital has concluded that you do not qualify for an exemption from the vaccine requirement based on a sincerely-held religious belief.  Although we respect that you have a passionate objection to the COVID-19 vaccine, this personal objection does not warrant an exemption.  Additionally, the requested accommodation would result in an undue hardship on the hospital.

(Compl. ¶ 11; *Id.* Ex. F at 1).

The same day, Munroe was terminated for failure to comply with the vaccination policy.

## B.    **Procedural Background**

On December 20, 2021, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  The EEOC issued a Right to Sue notice on

August 30, 2022.

On November 14, 2022, plaintiff brought this suit against BMC. The complaint alleges religious discrimination under Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a) (Count 1) and under Mass. Gen. Laws ch. 151B (Count 2). On January 17, 2023, BMC answered the complaint. BMC has now moved for judgment on the pleadings under Fed. R. Civ. P. 12(c), contending that plaintiff's expressed reasons for declining vaccination are not religious beliefs requiring an accommodation.

## II.   Legal Standard

A motion for judgment on the pleadings under Rule 12(c) differs from a motion to dismiss under Rule 12(b)(6) primarily because it is filed after the close of pleadings and "implicates the pleadings as a whole." *Aponte-Torres v. University of P.R.*, 445 F.3d 50, 54-55 (1st Cir. 2006). It is, however, treated similarly. *See id.* at 54. To survive a motion for judgment on the pleadings, a complaint must state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For a claim to be plausible, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).

In determining whether a complaint satisfies that standard, a court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences. *See R.G. Fin. Corp. v. Vergara-Nuñez*, 446 F.3d 178, 182 (1st Cir. 2006). On a Rule 12(c) motion, unlike a Rule 12(b) motion, the Court considers the pleadings as a whole, including the answer. *See Aponte-Torres*, 445 F.3d at 54-55 (citing 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1368 (3d ed. 2004)). In addition, a court may consider

documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice. *Grajales v. Puerto Rico Auth.*, 682 F.3d 40, 44 (1st Cir. 2012).

A court may enter a judgment on the pleadings "only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." *Aponte-Torres*, 445 F.3d at 54.

## III.   Analysis

### A.   Religious Discrimination Generally

Title VII prohibits employers from discriminating against employees on the basis of religion. 42 U.S.C. § 2000e-2(a)(1). Claims of religious discrimination under Title VII are analyzed under a two-part framework. *See Cloutier v. Costco Wholesale Corp.*, 390 F.3d 126, 133 (1st Cir. 2004). First, a plaintiff must make a *prima facie* case "that a *bona fide* religious practice conflicts with an employment requirement and was the reason for the adverse employment action." *Id.* Second, if the plaintiff establishes a *prima facie* case, "the burden then shifts to the employer to show that it offered a reasonable accommodation," or if it did not, "that doing so would have resulted in undue hardship." *Id.*[2]

To qualify as a *bona fide* religious practice, a two-part test must be satisfied: the plaintiff must show "both that the belief or practice is religious and that it is sincerely held." *E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 56 (1st Cir. 2002). Here, defendant concedes for the purposes of its motion that plaintiff's beliefs are sincerely held. Instead, it contends that the complaint fails to plausibly allege that her belief or practice derives from a religious belief.

---

[2] It appears that there is no material distinction between the analysis of this issue under Title VII and Mass. Gen. Laws ch. 151B, § 4(1A), and the Court will accordingly treat the claims identically. *See Mekonnen v. OTG Mgmt., LLC*, 394 F. Supp. 3d 134, 157 (D. Mass. 2019), *aff'd*, 2021 WL 1110915 (1st Cir. Mar. 23, 2021).

8

**B.**     **Griffin v. Massachusetts Dept. of Revenue**

In *Griffin v. Massachusetts Dep't of Revenue*, 2023 WL 4685942 (D. Mass. July 20, 2023), this Court addressed the issue of whether a plaintiff's refusal to accept a COVID-19 vaccine was based on a *bona fide* religious belief or practice.  Because this case is similar in many ways to *Griffin*, the Court will begin by essentially repeating its discussion in that case of the basic framework for assessing such a claim.

Title VII defines "religion" as including "all aspects of religious observance and practice, as well as belief . . . ."  42 U.S.C. § 2000e(j).  There are a multitude of difficulties in assessing whether a particular belief arises from a religion, as opposed to a set of moral, ethical, political, medical, or personal values.[3]  Indeed, the First Circuit has observed that Title VII's "capacious definition" of religion "leaves little room for a party to challenge the religious nature of an employee's professed beliefs."  *Union Independiente*, 279 F.3d at 56.  And courts confronted with Title VII religious-discrimination issues often simply assume that plaintiffs have established a *prima facie* case and resolve matters on other grounds.  *See, e.g.*, *Robinson v. Children's Hosp. Bos.*, 2016 WL 1337255, at *6 (D. Mass. Apr. 5, 2016) (assuming at summary judgment stage "that [plaintiff] can establish a *prima facie* case that her refusal to take the influenza vaccination is based on a sincerely held, *bona fide* religious belief"); *Cloutier*, 390 F.3d at 132 (avoiding the "thorny question" of whether a belief was religious and resolving the case on reasonable

---

[3] The EEOC has defined "religious practices" to include "moral and ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views."  29 C.F.R. § 1605.1.

That definition is, at the very least, problematic.  A devout follower of Jainism, for example, practices vegetarianism; that is a tenet of the religion.  A vegan may have an equally strong and sincerely held view that it is wrong to eat meat—but that is a moral or ethical view, not a religious view.  To hold otherwise is to stretch the meaning of the term "religion" far beyond any reasonable meaning of the term.  *See Fallon v. Mercy Cath. Med. Ctr. of SE. Pa.*, 200 F. Supp. 3d 553, 563 (E.D. Pa. 2016), *aff'd*, 877 F.3d 487 (3d Cir. 2017) (stating that the EEOC guidelines are not binding upon courts and that allowing a plaintiff to "only show a strongly held moral or ethical belief in lieu of a sincere religious belief would contravene Third Circuit and Supreme Court precedent," including *United States v. Seeger*, 380 U.S. 163 (1965) and *Welsh v. United States*, 398 U.S. 333 (1970)).

accommodation grounds).

It is clear, of course, that courts cannot delve into the merits of a particular religious belief.  To qualify as religious, beliefs need not be "acceptable, logical, consistent, or comprehensible to others."  *Union Independiente*, 279 F.3d at 56 (quoting *Thomas v. Review Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 714 (1981)).  And it is likewise clear that courts cannot favor any form of religion over another.

Nonetheless, the requirement of a *bona fide* religious belief must have some meaning.  "Title VII does not mandate an employer . . . to accommodate what amounts to a 'purely personal preference.'"  *Union Independiente*, 279 F.3d at 56 (quoting *Vetter v. Farmland Indus., Inc.*, 120 F.3d 749, 751 (8th Cir. 1997)).  Some level of inquiry must therefore be undertaken to assess whether a belief arises from a religion, as opposed to some other set of values or beliefs.

In *Fallon v. Mercy Catholic Medical Center of Southeastern Pennsylvania*, 877 F.3d 487 (3d Cir. 2017), the Third Circuit concluded that a plaintiff raising a religious objection to a flu vaccine requirement had not alleged a *bona fide* religious belief under Title VII.  *Id.* at 492-93.  The court defined "religion" as (1) address[ing] fundamental and ultimate questions having to do with deep and imponderable matters;" (2) "a belief-system" that is "comprehensive in nature . . . as opposed to an isolated teaching;" and (3) often marked "by the presence of certain formal and external signs."  *Id.* at 491 (quoting *Africa v. Pennsylvania*, 662 F.2d 1025, 1032 (3d Cir. 1981)).[4]  As examples of such signs, the court pointed to "formal services, ceremonial functions, the existence of clergy, structure and organization, efforts at propagation, observation

---

[4] Some courts have adopted, as a standard for assessing whether a belief or practice is religious, "whether a given belief that is sincere and meaningful occupies a place in the life of its possessor parallel to that filled by the orthodox belief in God."  *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 448 (7th Cir. 2013) (quoting *United States v. Seeger*, 380 U.S. 163, 165-66 (1965)).

of holidays and other similar manifestations associated with the traditional religions." *Id.* at 492

(quoting *Malnak v. Yogi*, 592 F.2d 197, 209 (3d Cir. 1979) (Adams, J., concurring).  It then

concluded that the plaintiff's belief that the flu vaccine "may do more harm than good" was

medical, rather than religious, and that his belief that one should not harm his own body was an

"isolated moral teaching." *Id.* at 492.

It is certainly true that a religious faith may be entirely individualized, and need not be

practiced through a church or other organization.  "A personal religious faith is entitled to as

much protection as one espoused by an organized group." *Vinning-El v. Evans*, 657 F.3d 591,

593 (7th Cir. 2011); s*ee* 29 C.F.R. § 1605.1 ("The fact that no religious group espouses such

beliefs or the fact that the religious group to which the individual professes to belong may not

accept such belief will not determine whether the belief is a religious belief of the employee or

prospective employee.").

There are, however, considerable practical issues posed by a claim of individualized

religious faith.  Among other things, if the claimed faith has no "formal and external signs,"

*Fallon*, 877 F.3d at 491, or other objective manifestations—for example, if it has no scripture,

clergy, services, or organization—that leaves only the employee's subjective belief.  That, in

turn, may make it exceptionally challenging for employers to administer employment policies

fairly, or for courts to resolve disputes arising from such professions of faith.

It is no answer to simply say that the standard is whether the belief is sincerely held; that

means that the two-part standard has been collapsed into a single inquiry.  And because

"sincerity of belief" is not normally susceptible to resolution on a motion to dismiss or for

summary judgment, even the most frivolous claims of religious belief would be difficult to

screen at an early stage.  *See Union Independiente*, 279 F.3d at 56 ("Credibility issues such as the

sincerity of an employee's religious belief are quintessential fact questions.").

Thus, it is surely true that the courts are not required to accept, at face value, any claim that a particular employment practice violates a religious requirement. Compare, for example, the following hypothetical involving two employees. One is an Orthodox Jew who contends that he cannot work on Saturday without violating the requirements of his faith. The other is an individual who claims that he must work remotely on all days because he believes in God, and God has advised him that he should never commute. Arguably, those two claims should be entitled to equal deference, as both involve a claim of religious conflict with an employment requirement. But that would be entirely unworkable, indeed absurd. Courts (and, for that matter, employers) must have *some* ability to assess the basis of such idiosyncratic claims, even if that assessment must necessarily be circumscribed so as not to be unduly intrusive. And courts cannot be limited solely to a determination of the subjective sincerity of the employee's religious belief.

Accordingly, a plaintiff who claims exemption from an employment requirement for religious reasons must plead some modicum of plausible facts sufficient to create an inference that the conflict arises from some specific religious tenet or principle. What is sufficient will no doubt vary from case to case; as a practical matter, well-established religious practices (such as the unwillingness of an observant Muslim or Jew to eat pork, or the requirement that an observant Sikh wear a turban) may require substantially less detailed pleading than a highly individualized claim. Still, the claim must be sufficiently plausible to withstand dismissal.

In short, a stated claim of religious belief, without more, cannot grant an individual "a blanket privilege 'to make his own standards on matters of conduct in which society as a whole has important interests.'" *Africa*, 662 F.2d at 1031 (quoting *Wisconsin v. Yoder*, 406 U.S. 205,

215-16 (1972)).

In *Griffin*, this Court concluded that a simple *ipse dixit* by the plaintiff—"this employment requirement conflicts with my religion"—was not sufficient to allege a claim of religious discrimination. *Id.* at *6. The complaint in *Griffin* alleged "nothing more than a bare representation that the basis of plaintiff's objection to vaccination derives from a religious belief." *Id.* at *7. It did "not describe her religious beliefs or principles in any meaningful way, or how they relate to vaccines generally, or the COVID-19 vaccine specifically." *Id.* Moreover, it did not "allege that her religion require[d] her to observe certain medical limitations that include a refusal to take vaccines, or certain types of vaccines" or provide any "specific indication as to how her beliefs or principles have affected other medical decisions in the past." *Id.*

###### C.    *Bazinet v. Beth Israel Lahey Health*

Relatedly, in *Bazinet v. Beth Israel Lahey Health*, 2024 WL 3770708 (1st Cir. Aug. 13, 2024), the First Circuit held that a hospital employee who was fired for refusing the COVID-19 vaccine had stated a claim of religious discrimination under Title VII and the Massachusetts antidiscrimination law, Mass. Gen. Laws ch.151B, § 4. *See Bazinet*, 2024 WL 3770708 at *8. Bazinet, the employee, believed that accepting the vaccine would offend her "Christian faith" because it was developed using fetal cell lines, making her "complicit in the performance of abortion." *Bazinet*, 2024 WL 3770708 at *5.

The First Circuit held that this assertion stated a good-faith religious belief that could be the basis of a claim of discrimination under Title VII. *See Bazinet*, 2024 WL 3770708 at *5. The court explained that she had "grounded her objection to taking the vaccine in a religious belief connecting the COVID-19 vaccine to opposition to abortion." *Id.* Although the question was not squarely presented, the court found that her opposition had "religious character" because

it arose from her opposition to abortion, a tenet of her faith.  *Id.*

### D.    Whether the Complaint Plausibly Asserts Discrimination Based on Religion

The question presented here is whether plaintiff's beliefs are religious beliefs (which are protected) or strongly held medical, scientific, or personal beliefs (which are not).  Plaintiff does not profess to adhere to a mainstream, well-established religion, but to an individualized and idiosyncratic set of beliefs.  The Court must therefore consider whether those beliefs, in fact, may be reasonably characterized as religious in nature.[5]

As an initial matter, the plaintiff refers to no external or objective manifestations of her asserted religion.  There is no scripture, sacred text, holy teaching, or other form of divine revelation.  There are no rites, rituals, observances, or ceremonies.  There are no services, prayers, devotionals, offerings, or other forms of worship.  There are no sabbath days, holy days, or holy festivals.  There are no priests or clergy.  There are no established places of worship or other holy spaces (other than "outside," Compl. Ex. B at 6).  She is not part of any congregation or gathering.  She describes no institutional or spiritual leadership, no structure or church organization, and no efforts at propagation or conversion.

Instead, plaintiff describes a set of naturalistic beliefs, many of which revolve around medicine and medical treatments.  As noted, she states that her beliefs cause her to decline "to participate in Western medicine," including refusing to accept some (but not all) forms of vaccines.  (Compl. Ex. B at 5).  She states that she refused the influenza vaccine for the first year it was mandated, instead opting to wear a mask.  (*Id.*).  And she asserts that she subsequently took the influenza vaccine, but distinguishes it from the COVID-19 vaccine because it derived

---

[5] Because this matter involves a claim of employment discrimination, the record for evaluating that issue is limited to what plaintiff disclosed to her employer about her asserted religion.  In any event, plaintiff points to no other text or source of information, such as a scripture, that sets out the principles or practices of her religion in any greater detail.

from a "dead or weakened naturally occurring virus" as opposed to a treatment derived from genetic material.  (*Id.*).

Plaintiff further states that "the vaccine is not the only medical treatment that [she] would decline" and that she would "never consent to chemotherapy, radiation, dialysis, artificial nutrition etc." (Compl. Ex. C at 3).  She states that "[t]aking a genetic therapy treatment that I am extremely fearful of . . . goes completely against beliefs that I have held most of my life." (*Id*. Ex. B at 5).   She states that "[s]ubmitting [her] body to The Covid 19 Vaccine, in [her] opinion an experimental genetic therapy, could not be more contrary to [her] religious beliefs that revolve around nature." (*Id*. Ex. C at 3).  And "[i]t is [her] sincerely held religious belief that man ought not to be altering the natural workings of the human body and [its] immune system." (*Id.*).

In short, plaintiff has a set of views concerning the use of medicine and medical treatments that strongly favor natural practices.  And she does not profess to believe in faith-based healing or healing by prayer.  In that respect, her views are essentially similar to the views of those who believe in natural remedies, organic food, organic farming practices, natural childbirth, and the like.  She also stated that she was "extremely fearful" of the vaccine because it was "an experimental genetic therapy."  In that respect, her views are similar to those who are opposed to vaccines due to fear or lack of comfort with their safety or efficacy.

Plaintiff nonetheless asserts that her medical beliefs are based on a religion; that the name of her religion is "Paganism"; and that "Mother Nature" is her "God."  (Compl. Ex. B at 5, 6; *Id*. Ex. C at 3).  Often, a name or a label (such as "Jehovah's Witness" or "Roman Catholic") can be a useful form of shorthand to describe a specific religion, denomination, or sect.  And such a label may also imply a belief in particular practices or beliefs that are a tenet or practice of that

religion (for example, "I am opposed to blood transfusions" or "I am opposed to abortion").

But that is not the situation here. "Paganism," without more, does not describe a specific religion or a specific set of religious principles. The principal, and original, meaning of the term is to describe all religions that are not Christian, or alternatively not one of the Abrahamic faiths (Judaism, Christianity, or Islam). *See Paganism*, Oxford English Dictionary (March 2005), https://www.oed.com/dictionary/paganism_n (last visited Sept. 16, 2024). More recently, it has come to serve as a loose descriptive term for various polytheistic, pantheistic, animistic, or naturalistic beliefs. *See id.* But there is very little, if anything, that can be inferred from the label, and certainly nothing concerning the use of modern medicine or medical treatments.

If there were nothing more—that is, nothing more than a set of personal medical beliefs, based on naturalistic views, to which plaintiff has affixed a religious label—that would surely be insufficient to qualify as a "religion" within the meaning of the anti-discrimination laws. Plaintiff does, however, go further: she attributes at least some divine qualities to Mother Nature, who she asserts is her "God." For that assertion to have religious significance, there must be at least some evidence that plaintiff views Mother Nature as a supreme being—that is, a creator, protector, law-giver, or savior, or an omniscient or omnipotent being, who is worshiped or revered in some form.

There is no indication that plaintiff makes prayers or offerings to Mother Nature. Nor does she indicate that there is any temple, church, or other place of worship, or that Mother Nature has revealed any sacred texts or scriptures. Nonetheless, plaintiff describes Mother Nature as a creator. (Compl. Ex. B at 5) ("She created all things and all that She created is meant to be here on the Earth."). Plaintiff suggests that the creation of living things has a mysterious, possibly divine purpose. (*Id.*) ("All things made by her . . . serve a purpose on the planet

although that purpose may not be known to man."). She suggests that the pandemic and other disasters were created as a form of retribution or restoration of balance. (*Id.*) ("[W]ildfires, global warming, earthquakes, and the Covid pandemic itself are signs that she is angry with Her humans and wants to humble them, lest they forget that there can only be one center of a circle and that She is that center. . . . When Mother Nature delivers plague and widespread disease it is because the Earth is out of balance and needs to be restored to equilibrium."). And she hints at the possibility of reincarnation. (*Id.*) ("When my time is up, and She comes for me, I will go without fear, knowing that I have completed the Circle of Life and will become part of the Earth again in a different form.).

The question thus becomes whether all those factors, taken together—plaintiff's medical beliefs and practices, her use of a religious label, and the expression of Mother Nature as having some qualities of divinity—are enough to establish that her beliefs may be fairly characterized as a religion. Again, the issue is not the sincerity of her beliefs—for present purposes, that is conceded—but whether they are religious rather than merely personal.

For purposes of evaluating her claim at this preliminary stage, the Court concludes that the complaint is sufficient, if only barely so, to plead a claim of a *bona fide* religious belief. It is of course true that any lawsuit based on a claim of idiosyncratic religious belief must inevitably rest on the plaintiff's own statements. In that respect, the difference between a blanket claim of religious belief ("my religion does not permit vaccination") and a complete description of the tenets of a claimed faith is only one of degree. Still, for purposes of evaluating the plausibility of a claim, the level of factual detail provided is important. And here, plaintiff has alleged some details of her claimed faith, including why she contends it is religious, not merely personal, and examples of how she has followed that claimed faith in the past, and therefore that her beliefs are

not recently fabricated.  While there are certainly other questions that need to be resolved before plaintiff can prevail, for present purposes her allegations as to her religious beliefs are sufficient.

That does not, however, end the inquiry.  Plaintiff does not claim that she has suffered unlawful discrimination because she believes in Paganism and Mother Nature.  Rather, she claims that she has suffered unlawful discrimination because she was required to comply with the COVID-19 vaccination requirement.  The question, as this Court stated in *Griffin*, "is whether the complaint alleges sufficient plausible facts from which it could be reasonably inferred that being vaccinated against COVID-19 violates a tenet or principle of her religious belief." *Griffin*, 2023 WL 4685942, at *6; *see Bazinet*, 2024 WL 3770708 at *5 (finding that the plaintiff stated a claim for religious discrimination because she "connect[ed] the COVID-19 vaccine to opposition to abortion," a general principle of her faith).

Here, the plaintiff has alleged that a core principle of being "Pagan" is submitting to natural forces and refusing artificial medical aid.  (Compl. Ex. B at 5).  She has asserted that the mRNA technology used to develop some of the COVID-19 vaccines makes them unnatural and impermissible, as distinct from the virus-derived annual flu vaccine.  (*Id.*).  That asserted connection is sufficient to support a plausible claim that accepting at least some of the COVID-19 vaccines would violate a tenet of her idiosyncratic religion.

There remain a number of unresolved issues, including whether the hospital can show that it offered a reasonable accommodation or, if it did not, whether doing so would have resulted in undue hardship.  *Cloutier*, 390 F.3d at 133.  There is certainly a question as to how a hospital could reasonably accommodate a nurse who is involved in direct patient care but who does not "participate in Western medicine," takes no medications, and indeed has not visited a doctor in 15 years, and who refused to be vaccinated against a highly contagious disease during a

worldwide pandemic.  Nonetheless, that issue has not been raised by the motion for judgment on the pleadings, and its resolution will await another day.

IV.     **<u>Conclusion</u>**

      For the foregoing reasons, the motion of defendant Boston Medical Center for judgment on the pleadings is DENIED.

**So Ordered.**

<br>

|  |  |
|---|---|
|  | <u>/s/ F. Dennis Saylor IV</u> |
|  | F. Dennis Saylor IV |
| Dated:  September 16, 2024 | Chief Judge, United States District Court |