UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMY MUNROE,<br><br>    Plaintiff,<br><br>    v.<br><br>BOSTON MEDICAL CENTER,<br><br>    Defendant. | Civil Action No. 1:22-cv-11935-FDS |

**DEFENDANT BOSTON MEDICAL CENTER'S STATEMENT OF MATERIAL FACTS**

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, Defendant Boston Medical Center ("BMC" or "Defendant") submits this Statement of Material Facts in support of its Motion for Summary Judgment.

1.  Plaintiff, Amy Munroe ("Plaintiff") is a former Staff Nurse at Boston Medical Center. See Excerpt from deposition transcript of Plaintiff, Amy Munroe, dated November 11, 2024, ("Munroe Dep."), at 13:2-14:20, attached as Exhibit 1 to Declaration of Jeanette M. Piaget Figueroa ("Piaget Dec."); Plaintiff's Job History, attached as Exhibit 2 to Piaget Dec.

2.  Boston Medical Center is a safety-net hospital located in Boston's South End. BMC provides a comprehensive range of inpatient, clinical, and diagnostic services in more than seventy medical specialties and subspecialties. See Declaration of John Hickey at ¶ 4 ("Hickey Dec.").

3.  From October 13, 1998 to October 15, 2021, Plaintiff worked on a renal and medical floor in the hospital. Exhibit 1, Munroe Dep. at 13:2-14:20, 67:22-68:2; Plaintiff's Job History, Exhibit 2 to Piaget Dec.

1

4. Patients on a renal and medical floor usually suffer from acute or chronic kidney conditions that require specialized care, including monitoring, management of complications, and dialysis. Exhibit 1, Munroe Dep. at 22:1-10; Hickey Dec. at ¶ 22.

5. Plaintiff's duties in the renal and medical floor included, but were not limited to, monitoring vital signs, administering medication, washing and feeding patients, and assisting patients with limited mobility in relieving themselves and bathing. Exhibit 1, Munroe Dep. at 13:20-14:2.

6. Plaintiff would care for approximately twenty-seven patients each shift prior to the start of the COVID-19 pandemic. Exhibit 1, Munroe Dep. at 18:2-23.

7. Beginning in or around April 2020 and through early 2021, the 7E East medical floor in which Plaintiff worked was converted into a COVID-19 unit – a medical unit dedicated to caring for patients with COVID-19 – for several months on two separate occasions. Exhibit 1, Munroe Dep. at 14:10-20, 18:24-19:8; Hickey Dec. at ¶¶ 9, 23.

8. When the floor was converted to a COVID-19 unit, Plaintiff interacted with each COVID-19 patient three to four times per shift. Exhibit 1, Munroe Dep. at 19:17-20:11. Plaintiff administered medication, moved or positioned patients, and assisted in emergencies. Exhibit 1, Munroe Dep. at 19:20-20:11.

9. Plaintiff interacted with certified nursing assistants, nurses, and doctors throughout her shift. Exhibit 1, Munroe Dep. at 20:19-21:11.

10. From March 2020 to the end of the COVID-19 public health emergency, BMC was on the front lines of the pandemic providing care for Boston's most vulnerable populations. See Hickey Dec. at 5-6. During surges, BMC was forced to close several units and/or or convert them into COVID-19 units to care for patients critically ill with COVID-19. Hickey Dec. at ¶ 9.

11. Between January 31, 2020 and July 31, 2021, BMC treated 3,281 patients for COVID-19. Hickey Dec. at ¶¶ 6-7. Of the 3,281 patients treated for COVID-19 during this time, a total of 226 patients died from COVID-19 or COVID-19 related complications at BMC. Id. Additionally, several hundred BMC staff members reported contracting COVID-19 between January 2020 and July 31, 2021. Hickey Dec. at ¶ 8.

12. BMC began offering the COVID-19 vaccine to employees soon after it became available to healthcare workers in January 2021. Hickey Dec. at ¶ 11.

13. Between January 2021 and July 2021, the Centers for Disease Control and Prevention ("CDC") recommended healthcare workers receive the COVID-19 vaccine and published results stating that the vaccines were effective at reducing the symptoms of the virus and that individuals who were vaccinated were less likely to spread the virus. Hickey Dec. at ¶ 12.

14. On July 13, 2021, BMC announced that it would require all employees to be vaccinated against COVID-19. Hickey Dec. at ¶ 10; see also Exhibit 4, attached to Hickey Dec. at ¶ 13.

15. In August 2021, BMC implemented an Immunization Policy that required all employees to be vaccinated against COVID-19 (the "Policy"). Hickey Dec. at ¶ 17; see also Exhibit 5, attached to Hickey Dec. at ¶ 17.

16. BMC relied on the publicly available recommendations of the CDC and its own experience in the pandemic when it determined that mandating vaccination was the best way to reduce the risk of transmission amongst healthcare workers and between healthcare workers and patients. Hickey Dec. at ¶¶ 14-16.

17. At the time BMC implemented the Policy, the CDC recommended vaccination as the best way to prevent COVID-19 infection and transmission of the virus. Hickey Dec. at ¶¶ 14-16.

18. Plaintiff has previously complied with workplace requirements regarding vaccination, including receiving the flu vaccine while employed by BMC. Exhibit 1, Munroe Dep. at 16:4-17:10, 24:4-13.

19. Between August 2021 and September 2021, Plaintiff shared her concerns regarding the safety and efficacy of the COVID-19 vaccine with colleagues at BMC, including the Chief Nursing Officer Nancy Gaden, an attending physician, and members of BMC's Infectious Disease Department. Exhibit 1, Munroe Dep. at 39:9-37:5.

20. Plaintiff stated on several occasions that she objected to the vaccine for safety and ethical reasons based on her opinion that the vaccine manipulated a person's cells. Exhibit 1, Munroe Dep. at 30:19-31:3, 33:7-12, 37:2-5.

21. On September 14, 2021, Plaintiff emailed several members of BMC's Infectious Disease Department with questions regarding the safety and efficacy of the COVID-19 vaccines based on articles she read on the internet. Exhibit 1, Munroe Dep. at 35:5-37:18, marked as Exhibit 3 at Munroe Dep, attached as Exhibit 3 to Piaget Dec.

22. A BMC physician responded to Plaintiff's email with facts regarding the COVID-19 vaccine and assuring Plaintiff the vaccine was safe. Exhibit 1, Munroe Dep. at 41:-42:10.

23. On August 20, 2021, Plaintiff submitted a request for religious exemption to the Policy. Exhibit 1, Munroe Dep. at 43:12-15, marked as Exhibit 4 at Munroe Dep., attached as Exhibit 4 to Piaget Dec.

24. Plaintiff attached a document to her religious exemption request which contains her personal statement as to her religious beliefs. Exhibit 1, Munroe Dep. at 43:12-15, marked as Exhibit 4 at Munroe Dep., attached as Exhibit 4 to Piaget Dec.

25. Plaintiff stated that she was raised Catholic, but her beliefs changed and developed her own thoughts and beliefs that "lined up with the ancient religion Paganism". Exhibit 1, Munroe Dep. at 43:12-15, marked as Exhibit 4 at Munroe Dep., attached as Exhibit 4 to Piaget Dec.

Plaintiff stated she believes "we are children of Mother Earth which has it's *[sic]* own spirit", and that she believes "Mother Nature is God." Id.

26. Plaintiff also stated that she believes the "Covid pandemic itself are signs that [Mother Nature] is angry with Her humans and wants to humble them" and that "[w]hen Mother Nature delivers plague and widespread disease it is because the Earth is out of balance and needs to be restored to equilibrium." Exhibit 1, Munroe Dep. at 43:12-15, marked as Exhibit 4 at Munroe Dep., attached as Exhibit 4 to Piaget Dec.

27. Plaintiff further stated that "[d]espite being a nurse…I personally do not participate in Western medicine the same way that most people do." Exhibit 1, Munroe Dep. at 43:12-15, marked as Exhibit 4 at Munroe Dep., attached as Exhibit 4 to Piaget Dec. Plaintiff stated: "[i]n accordance with my beliefs, I opt to rely on Mother Nature for natural remedies to heal my ailments, or to suffer through them until I am well." Id.

28. In the personal statement to her religious exemption request, Plaintiff admitted that she receives the flu vaccine every year, as required by BMC, despite her desire not to receive the flu vaccine due to her beliefs. Exhibit 1, Munroe Dep. at 43:12-15, marked as Exhibit 4 at Munroe Dep., attached as Exhibit 4 to Piaget Dec.

29. Plaintiff stated she complied with the flu vaccine requirement because she believes "it is made from a dead or weakened naturally occurring virus", while the COVID-19 vaccine is a "genetic therapy treatment." Exhibit 1, Munroe Dep. at 43:12-15, marked as Exhibit 4 at Munroe Dep., attached as Exhibit 4 to Piaget Dec. Plaintiff states she is "extremely fearful" or receiving a "genetic therapy treatment" to "treat a naturally occurring virus" because it "goes completely against [her] beliefs that [she] has held most of [her] life." Id.

30. Plaintiff testified that she has a "reverence for spiritual connection to the Earth." Exhibit 1, Munroe Dep. at 45:14-18.

31.     Plaintiff testified that she does not worship any deity other than Mother Nature. Exhibit 1, Munroe Dep. at 46:2-4.

32.     Plaintiff testified that she believes the "more men and mankind distance themselves from nature and our roots, the worse off he will be" and that "manipulating DNA or RNA" is a way in which mankind distances himself from nature and she does not "believe that it's man's place to be manipulating those things because I feel it's dangerous to…that they can throw off the whole environment and the Earth, everything." Exhibit 1, Munroe Dep. at 47:9-48:3.

33.     Plaintiff also testified that by "Western medicine" in the personal statement attached to her religious exemption request she was referring to "the medicine that we practice in our hospitals in the United States." Exhibit 1, Munroe Dep. at 43:12-15, marked as Exhibit 4 at Munroe Dep., attached as Exhibit 4 to Piaget Dec. Plaintiff further testified that she does not refuse to participate in Western medicine, but that she has not had a "need for Western medicine." Id.

34.     Plaintiff testified that the statement "I take no medications" in her religious exemption request referred solely to prescribed pharmaceuticals, but that this statement was not related to her religious beliefs. Exhibit 1, Munroe Dep. at 49:19-50:12. Plaintiff testified that she takes over-the-counter medications such as Tylenol. Exhibit 1, Munroe Dep. at 25:8-12.

35.     Plaintiff testified that her sole objection to the COVID-19 vaccine was based on her opinion that it uses mRNA technology and her concern that this technology changes a person's genes. Exhibit 1, Munroe Dep. at 50:20-51:8.

36.     On September 24, 2021, BMC sent Plaintiff a letter notifying her that it was denying her request for a religious exemption to the policy. Exhibit 1, Munroe Dep. at 54:3-13, marked as Exhibit 6 at Munroe Dep., attached as Exhibit 5 to Piaget Dec.

37.     On September 25, 2021, Plaintiff responded to the email message sent to her containing the denial letter and stated that the information in the letter was incorrect as it misstated

her religious beliefs. Exhibit 1, Munroe Dep. at 52:4-13, marked as Exhibit 5 at Munroe Dep., attached as Exhibit 6 to Piaget Dec.

38.     John Hickey, Executive Director of Employee & Labor Relations at BMC, responded to Plaintiff's email and apologized for the error and stated BMC needed additional information to review her request for religious exemption to the vaccine. Exhibit 1, Munroe Dep. at 52:4-13, marked as Exhibit 5 at Munroe Dep., attached as Exhibit 6 to Piaget Dec.

39.     Plaintiff was sent a form requesting additional information on her religious beliefs. Exhibit 1, Munroe Dep. at 56:23-57:19, marked as Exhibit 7 at Munroe Dep., attached as Exhibit 7 to Piaget Dec.  Plaintiff attached two documents in response to the questions in the form. Id.

40.     In response to the first question regarding the accommodation(s) Plaintiff needed to enable her to perform the essential functions of her job, Plaintiff stated that she did not need any accommodations beyond "that which is already in place at Boston Medical Center." Exhibit 1, Munroe Dep. at 56:23-57:19, marked as Exhibit 7 at Munroe Dep., attached as Exhibit 7 to Piaget Dec.  Plaintiff testified that the accommodations in place were "wearing personal protective equipment, masks and gloves." Exhibit 1, Munroe Dep. at 59:13-20.

41.     Plaintiff admitted that she had no basis for stating that providing her with personal protective equipment on an ongoing basis would not result in financial hardship to BMC. Exhibit 1, Munroe Dep. at 59:21-60:20.  Plaintiff also admitted that, prior to the COVID-19 pandemic, she did not usually wear personal protective equipment while working at the hospital. Id.

42.     Plaintiff stated she was willing to be tested for COVID-19 as required by BMC. Exhibit 1, Munroe Dep. at 56:23-57:19, marked as Exhibit 7 at Munroe Dep., attached as Exhibit 7 to Piaget Dec.

43.     In implementing the Policy, BMC had determined that testing and personal protective equipment were inadequate to reduce transmission because tests might miss infections

7

on days staff are not tested and personal protective equipment relies on staff always appropriately wearing the equipment. Hickey Dec. at ¶¶ 27-29.

44.     Plaintiff also stated she could be accommodated by being reassigned from the COVID-19 unit. Exhibit 1, Munroe Dep. at 56:23-57:19, marked as Exhibit 7 at Munroe Dep., attached as Exhibit 7 to Piaget Dec.  Plaintiff testified that, at the time, she was unaware if there was a designated COVID-19 unit, and she assumed that she as still receiving COVID-19 patients in her unit. Exhibit 1, Munroe Dep. at 61:16-62:8.

45.     In response to the second question regarding how Plaintiff's sincerely held religious belief relates to her requested accommodation(s), Plaintiff stated that, in her opinion, the COVID-19 vaccine is an experimental genetic therapy and was contrary to her religious beliefs as these "revolve around nature" and that "man ought not to be altering the natural workings of the human body and it's immune system." Exhibit 1, Munroe Dep. at 56:23-57:19, marked as Exhibit 7 at Munroe Dep., attached as Exhibit 7 to Piaget Dec.

46.     On October 7, 2021, BMC sent Plaintiff a second letter notifying her that it was denying her request for a religious exemption to the Policy. See October 7, 2021 Letter to Plaintiff, attached as Exhibit 8 to Piaget Dec.

47.     On October 15, 2021, BMC terminated Plaintiff's employment for failing to comply with the Policy. See October 7, 2021 Letter to Plaintiff, attached as Exhibit 8 to Piaget Dec.; see also Plaintiff's Job History, attached as Exhibit 2 to Piaget Dec.

48.     Between August 1, 2021 and January 31, 2022, BMC treated 993 patients with COVID-19. Hickey Dec. at ¶ 33.

49.     Based on recommendations from the CDC and its experience during the pandemic, BMC determined that vaccination was the best way to protect the hospital against increased risk of transmission of COVID-19 within the hospital that could create legal liability and would negatively impact its reputation of providing safe care for patients. Hickey Dec. at ¶¶ 31-32.

50. Based on its experience during the pandemic, BMC also determined that vaccination would protect its staff from becoming ill and needing to take time off, which could have left critical departments understaffed. Hickey Dec. at ¶ 31.

        Respectfully Submitted,

        BOSTON MEDICAL CENTER,

        By its attorneys,

        */s/ Jeanette M. Piaget Figueroa*
        Jamie L. Kessler, BBO# 681867
        Matthew D. Freeman, BBO #664355
        Jeanette M. Piaget Figueroa, BBO #707465
        JACKSON LEWIS P.C.
        75 Park Plaza, 4th Floor
        Boston, Massachusetts 02116
        jamie.kessler@jacksonlewis.com
        matthew.freeman@jacksonlewis.com
        jeanette.piagetfigueroa@jacksonlewis.com

Dated: January 30, 2025        TEL: (617) 367-0025

**CERTIFICATE OF SERVICE**

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 30, 2025.

        */s/ Jeanette M. Piaget Figueroa*
        Jackson Lewis P.C.