UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMY MUNROE,  )<br>  )<br>      Plaintiff,  )<br>  )<br>  )    Civil Action No.<br>v.  )    22-11935-FDS<br>  )<br>BOSTON MEDICAL CENTER,  )<br>  )<br>      Defendant.  )<br>  ) | |

**MEMORANDUM AND ORDER ON
<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

**SAYLOR, J.**

    This is a dispute arising out of a mandatory COVID-19 vaccination policy for employees of defendant Boston Medical Center ("BMC"). That policy, implemented in August 2021, allows for medical or religious exemptions under certain circumstances. Shortly after the policy was announced, plaintiff Amy Munroe, a BMC staff nurse, submitted a request for exemption based on her asserted pagan religious beliefs. Plaintiff contended that her pagan beliefs prevented her from receiving the vaccine because, she asserted, the mRNA technology used in COVID vaccines could affect the natural state of her body by manipulating her genes and DNA.

    Her request for an exemption was denied, and on October 15, 2021, BMC terminated her employment for failure to comply with the vaccination policy. The complaint alleges that her termination was an act of religious discrimination in violation of both Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a), and Mass. Gen. Laws ch. 151B.

    Defendant has moved for summary judgment and plaintiff has moved to strike portions of the deposition of John Hickey, which is part of the evidentiary record. For the following

reasons, plaintiff's motion to strike will be denied and defendant's motion for summary judgment will be granted.

## I. Background

The following facts are undisputed unless otherwise noted.

### A. Factual Background

#### 1. Parties

Boston Medical Center is an acute-care hospital located in Boston, Massachusetts. (ECF 33 ¶ 2).

Amy Munroe was employed as a staff nurse by BMC from October 1998 to October 15, 2021. (*Id.* ¶ 3). She worked on a renal and medical floor in the hospital. (*Id.*).

#### 2. COVID-19

COVID-19 is a contagious viral disease that can cause serious illness and death. The first known case of COVID-19 occurred in December 2019. *See* WORLD HEALTH ORG., ARCHIVED: WHO TIMELINE – COVID-19 (Apr. 27, 2020). By March 2020, it had spread into a worldwide pandemic. *Id.* As of this writing, more than 1.2 million people in the United States have died from COVID-19. CTRS. FOR DISEASE CONTROL AND PREVENTION, PROVISIONAL COVID-19 MORTALITY SURVEILLANCE (last updated June 28, 2025). COVID-19 is particularly dangerous for the elderly, and for people with lung conditions; heart disease; brain and nervous system conditions; diabetes; obesity; cancer; certain blood disorders; a weakened immune system; chronic kidney or liver diseases; and Down syndrome. MAYO CLINIC, COVID-19: WHO'S AT HIGHER RISK OF SERIOUS SYMPTOMS? (July 21, 2023).

The first known case of COVID-19 occurred in December 2019. *See* WORLD HEALTH ORG., ARCHIVED: WHO TIMELINE – COVID-19 (Apr. 27, 2020). By March 2020, it had spread

into a worldwide pandemic. *Id.* In December 2020, the Food and Drug Administration used an Emergency Use Authorization to approve the Pfizer-BioNTech vaccine, and approval for other COVID vaccines followed. (Compl. ¶ 9).

### 3. The COVID-19 Vaccination Policy

From March 2020 to the end of the COVID-19 public health emergency, BMC was on the front lines of the pandemic. (ECF 33 ¶ 10). Between January 31, 2020, and July 31, 2021, BMC treated 3,281 patients for COVID-19. (*Id.* ¶ 11). During that time, 226 patients died, and several hundred BMC staff contracted COVID-19. (*Id.*). BMC began offering the COVID-19 vaccine to employees soon after it became available in January 2021. (*Id.* ¶ 12).

In August 2021, BMC implemented an immunization policy that required all employees receive the COVID-19 vaccine. (*Id.* ¶¶ 14-15). The policy stated as follows: "COVID-19 vaccination is a requirement to work or volunteer or to be visiting personnel at BMC unless BMC approves a medical or religious exemption from the requirement for immunization." (Compl. Ex. A at 1). The policy included instructions for submitting a request for an exemption and advised that individuals who did not comply with the policy would be "subject to disciplinary action up to and including termination of their employment." (*Id.* at 2).

Between January and July 2021, the Centers for Disease Control and Prevention ("CDC") recommended that healthcare workers receive the COVID-19 vaccine and published data showing that the vaccine was effective at reducing the symptoms of the virus and decreasing its spread. (ECF 33 ¶ 13). Based on the CDC's recommendations and published data, and on its own experience as a hospital during the pandemic, BMC concluded that a vaccinate mandate for employees was necessary to protect both patients and employees. (*Id.* ¶ 16).

### 4. Plaintiff's Request for an Exemption

On August 20, 2021, Munroe submitted a request for exemption from the vaccination policy because of her religious beliefs. (Compl. Ex. B. at 1). The request included a personal statement. (*Id.* at 3-5).

Munroe's statement began by stating that she "was born into a Roman Catholic family," but after becoming an adult, she "realized that [she] was definitely not 'a Catholic.'" (Compl. Ex. B at 4). She later "formed [her] own thoughts but did not know what they amounted to as far as 'a religion.'" (*Id.*). Years later, she "realized that [her] beliefs lined up with the ancient religion Paganism." (*Id.*). She stated that "Pagans were peaceful Nature worshippers who believed in leaving others to do what they saw fit for themselves." (*Id.*).

The statement went on to say:

> I believe that we are children of the Mother Earth which has [its] own spirit. I believe in the Circle of Life. Mother Nature is God and She is the most powerful force on Earth. She created all things and all that She created is meant to be here on the Earth. All things made by her, humans, animals, birds, insects, trees, flowers, rocks, unicellular organisms, parasites and viruses serve a purpose on the planet although that purpose may not be known to man. She created humans with, amongst other things, innate senses, minds to think, and immune systems to protect. It is my belief that wildfires, global warming, earthquakes, and the Covid pandemic itself are signs that she is angry with Her humans and wants to humble them, lest they forget that there can only be one center of a circle and that She is that center. Man is not the center of the universe, nor the most powerful, nor any more or less important than other forms of life. When Mother Nature delivers plague and widespread disease it is because the Earth is out of balance and needs to be restored to equilibrium. It is evident to me that the more man attempts to dominate the earth the more he tries to control and interfere with natural occurrences, and the more he distances himself from nature the worse off he will be.
>
> Despite being a nurse, or maybe because of being one, I personally do not participate in western medicine the same way that most people do. In accordance with my beliefs, I opt to rely on Mother Nature for natural remedies to heal my ailments, or to suffer through them until I am well. Mother Nature will get me through them, or she won't. When my time is up, and She comes for me, I will go without fear, knowing that I have completed the Circle of Life and will become part of the Earth again in a different form.

(*Id.* at 5).

She described her unwillingness to take the vaccine as follows:

4

> I have not been to a doctor in at least fifteen years. I take no medications. The first year that BMC mandated the flu shot I opted to wear a mask for the season. That option has since been taken away. I begrudgingly get the vaccine every year . . . . At least the flu vaccine, unlike the Covid genetic therapy treatment, is made from a dead or weakened naturally occurring virus . . . . A natural life suits me and it is why I practice Paganism. There may come a day when I will need the help of a doctor, but until that time comes, I will continue to practice natural healthcare at home that has served me well for three decades.
>
> I had Covid very recently and the immune system that Mother Nature provided me with got me through it. According to many studies I have better immunity than that which is provided by the vaccine. I am no more a danger to our patients than a vaccinated person. The CDC website states that the vaccine does not prevent disease or transmission of disease, that it lessens symptoms if one contracts the virus. I cannot defy Mother Nature, nor my innate instincts. Taking a genetic therapy treatment that I am extremely fearful of, against my will and better judgment, as a perfectly healthy human being, to treat a naturally occurring virus, goes completely against beliefs that I have held most of my life . . . .

(*Id.*).

In the accompanying "Religious Organization Statement Form," Munroe wrote that the "Name of [her] Religious Organization" was "Paganism"; that the "Religious Organization Address and Email" was "Outside"; and that the "Name of Religious Leader and Title" was "Mother Nature." (*Id.* at 6).

Munroe also expressed willingness to wear additional personal protective gear such as masks and gloves and to undergo regular testing as an alternative to the vaccine. (ECF 33 ¶¶ 40-42).

### 5. Defendant's Denial of the Exemption Request

On September 24, 2021, BMC sent Munroe an initial letter rejecting her request for a religious exemption to the vaccine mandate. (*Id.* ¶ 36). The letter stated that "[a]fter an initial review, the hospital has determined that additional information is required to aid in the evaluation of your request." (Compl. Ex. D at 1). In particular, it said, "[w]e acknowledge that you are making a request based on your faith as a Roman Catholic, although you do not appear

to be relying on the Catholic Church's most recent statements in support of COVID-19 vaccination." (*Id.*).

On September 29, 2021, Munroe responded to the letter. (Compl. Ex. C). She made an additional statement in support of her request:

> [M]y God is Mother Nature. Submitting my body to the Covid 19 Vaccine, in my opinion an experimental genetic therapy, could not be more contrary to my religious beliefs that revolve around nature. It is my sincerely held religious belief that man ought not to be altering the natural workings of the human body and [its] immune system. We humans truly are a miracle in our natural design. It should be noted that the vaccine is not the only medical treatment that I would decline. I would never consent to chemotherapy, radiation, dialysis, artificial nutrition etc. In accordance with my religious beliefs, exemption from the vaccine is necessary.

(*Id.* at 3). She also stated that she had "natural immunity" because she had recovered from COVID-19. (*Id.* at 4). And she proposed various workplace accommodations, largely focused on wearing a mask. (*Id.*).

In a letter dated October 7, 2021, BMC reaffirmed that Munroe had to comply with the hospital's vaccine requirement by October 15, 2021. (Compl. Ex. E at 1). The letter stated:

> After engaging in an interactive process with you, the hospital has concluded that you do not qualify for an exemption from the vaccine requirement based on a sincerely-held religious belief. Although we respect that you have a passionate objection to the COVID-19 vaccine, this personal objection does not warrant an exemption. Additionally, the requested accommodation would result in an undue hardship on the hospital.

(Compl. ¶ 11; *Id.* Ex. F at 1).

On October 15, 2021, Munroe was terminated for failure to comply with the vaccination policy. (*Id.* ¶ 47). BMC had determined that testing and personal protective equipment were inadequate alternatives to reducing transmission of the virus. (*Id.* ¶ 43). Citing CDC recommendations and its own experience, BMC determined that mandating vaccines was the best way to protect the hospital, including its patients and staff, against the virus. (*Id.* ¶¶ 49-50).

## B. Procedural Background

On November 14, 2022, Munroe brought this suit against BMC. The complaint alleges religious discrimination under Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a) *et seq.* (Count 1) and Mass. Gen. Laws ch. 151B (Count 2). Defendant has moved for summary judgment, contending that Munroe has failed to establish that her beliefs at odds with BMC's immunization policy were religious and sincerely held. Defendant further contends that even if Munroe's beliefs were religious, an exemption would have posed an undue hardship on the business. At the same time, plaintiff has moved to strike portions of the deposition of John Hickey on the ground that they contain hearsay and thus should not be considered.

## II. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)). Summary judgment shall be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted). In evaluating a summary judgment motion, the court indulges all reasonable inferences in favor of the nonmoving party. *See O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993). When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotations omitted). The nonmoving party may

not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256-57.

### III.     Analysis

####   A.     Munroe's Motion to Strike

Before reaching the merits of defendant's motion for summary judgment, the Court must resolve the motion to strike.

"An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Plaintiff seeks to strike parts of paragraphs 14, 15, 16, and 27 from the Declaration of John Hickey, the Executive Director of Employee and Labor Relations at BMC, on the ground that they contain hearsay and are thus inadmissible in court.[1] (ECF 36 at 1-3).[2] In the disputed testimony, Hickey explains that Defendant's decision to introduce a vaccine mandate in 2021 was "based on the recommendations of the CDC." (ECF 33 Ex. B ¶¶ 14, 15, 16, and 27).

Plaintiff contends that Hickey's statements are hearsay because they are offered either for the truth that the CDC in fact made those recommendations, or for the truth of the underlying efficacy claims. (*Id.* at 2-4). However, "an out-of-court statement . . . offered to show that the declarant had certain information, or entertained a specific belief" is not hearsay. *United States v. Murphy*, 193 F.3d 1, 6 n.2 (1st Cir. 1999). Here, Hickey's statements are offered to show that defendant's policy decisions in 2021 were based in part on a specific recommendation. (ECF 38

---

[1] Plaintiff cites Paragraphs 10, 11, 12, and 22 of the Declaration, but the text is taken from Paragraphs 14, 15, 16, 17 and 27.

[2] Plaintiff also seeks to strike these statements under Local Rule 7.1. Because defendant included a Local Rule 7.1 certification in its motion for summary judgment, the Court need not consider whether the parties met and conferred as to any particular statement contained in the record.

at 4). They are therefore not hearsay and are properly a part of the record for consideration on summary judgment. *See Cyr v. Bos. Med. Ctr.*, 2025 WL 269239, at *4 (D. Mass. Jan. 22, 2025) (denying a nearly identical motion to strike on the same grounds); *Harmon v. Bos. Med. Ctr.*, 2024 WL 4815292, at *4 (D. Mass. Nov. 18, 2024) (same). The motion to strike will accordingly be denied.

B.  **Motion for Summary Judgment**

Plaintiff alleges that defendant's failure to accommodate her sincerely held religious beliefs by denying her an exemption and terminating her employment violated Section 703 of Title VII and Mass. Gen. Laws ch. 151B, § 4(1A). Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a). Under the statute, "religion" is defined to "include[ ] all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* § 2000e(j).

The state-law counterpart, Mass. Gen. Laws ch. 151B, § 4(1), prohibits employers from discriminating against any employee based on religion. The Massachusetts statute also makes it unlawful for "an employer to impose upon an individual as a condition of obtaining or retaining employment any terms or conditions, compliance with which would require such individual to violate, or forego the practice of, his creed or religion . . . and the employer shall make reasonable accommodation to the religious needs of such individual." Mass. Gen. Laws ch. 151B, § 4(1A). In construing ch. 151B, the Massachusetts Supreme Judicial Court generally looks to federal court interpretations of Title VII for guidance, and so the First Circuit applies the statutes interchangeably. *See Noviello v. City of Boston*, 398 F.3d 76, 91 (1st Cir. 2005).

The First Circuit "appl[ies] a two-part framework in analyzing religious discrimination claims under Title VII." *Lowe v. Mills*, 68 F.4th 706, 719 (1st Cir. 2023). A plaintiff "must first show 'that a bona fide religious practice conflicts with an employment requirement and was the reason for the adverse employment action.'" *Bazinet v. Beth Israel Lahey Health, Inc.*, 113 F.4th 9, 15 (1st Cir. 2024) (quoting *Mills*, 68 F.4th at 719). If the plaintiff succeeds, the burden shifts to the defendant "to show that it 'offered a reasonable accommodation or, if it did not offer an accommodation, that doing so would have resulted in undue hardship.'" *Id.* (quoting *Mills*, 68 F.4th at 719).

### 1. *Bona Fide* Religious Belief

Defendant first contends that plaintiff has failed to establish that her concerns about the immunization policy were religious, and thus has not established a *prima facie* case of religious discrimination. (ECF 31 at 1-2). Defendant asserts specifically that plaintiff's pagan beliefs are merely a pretext to cover for her personal "medical judgments on the effects of the vaccine." (ECF 32 at 9). However, the Court has already ruled that plaintiff's professed beliefs are sufficiently religious to establish a *prima facie* case of religious discrimination for purposes of surviving a motion to dismiss for failure to state a claim. (ECF 24 at 17). With no additional evidence in the record tending to undermine that analysis, summary judgment will not be granted on that basis.

### 2. Undue Hardship

Defendant further contends that it did not discriminate against plaintiff on the basis of her religious beliefs because any reasonable accommodation of those beliefs would have imposed an undue hardship on BMC. (ECF 31 at 2).

10

An accommodation poses an undue hardship "when [the] burden is substantial in the overall context of an employer's business." *Groff v. DeJoy*, 600 U.S. 447, 468 (2023). The undue-hardship inquiry takes a "common-sense" approach. *Id.* at 571. Under that approach, a court "must take into account the context of the particular employer's business and the nature of operations . . . . Considerations include not only direct economic costs, but indirect ones related to health and safety." *Antredu v. Massachusetts Dep't of Youth Servs.*, 2024 WL 1539725, at *5 (D. Mass. Apr. 9, 2024) (quoting *Together Emps. v. Mass General Brigham, Inc.*, 573 F.Supp.3d 412, 440 (D. Mass. 2021)).

Relevant factors include the employer's legitimate safety concerns and whether the accommodation requires the employer to "relieve an employee of her essential job functions and assign them to another employee." *Id.* "Moreover, in determining undue hardship, it is appropriate to consider aggregate effects when multiple employees are granted the same accommodation." *Together Emps.*, 573 F. Supp. 3d at 437 (citing *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 n.15 (1977)).

Here, the undisputed facts show that defendant operates an acute-care hospital in a major city. It can hardly be disputed that a hospital is entitled to rely upon, and apply, medical and scientific evidence in the development and enforcement of its policies and procedures, and that prevention of infection is of paramount importance. And defendant was certainly within its rights to conclude that its patients and staff were likely to face an increased rate of infection had it allowed plaintiff an exemption to the vaccine mandate. Plaintiff worked on the renal and medical floor, which required regular contact with patients to administer medication, wash and feed, and assist with mobility. (ECF 33 ¶ 5). Plaintiff also interacted with other employees regularly. (*Id.* ¶ 9). Again, BMC treated more than 3,000 patients for COVID-19 between

11

January 31, 2020, and July 31, 2021, and more than 200 of them died from the virus or its complications. (*Id.* ¶ 11). In addition, several hundred BMC staff members contracted COVID-19 during that period. (*Id.*). When infections peaked, the hospital was forced to close units or convert them to care for patients who were critically ill with COVID-19. (*Id.* ¶ 10).

Against that evidence of hardship, plaintiff contends only that the vaccines do not work and insists that defendant is obligated to prove that they do work. (ECF 34 at 9-14) (conceding that "[i]f the vaccines worked, it would not be difficult for Defendant to establish undue hardship"). But the efficacy of the COVID vaccines—or their purported inefficiency—is not relevant to the issue of undue hardship. The issue is the reasonableness of the employer's decision based on the knowledge and evidence available to it at the time.

The First Circuit has found that when "the record demonstrates that [an employer] relied on the objective, scientific information available to [it], with particular attention to the views of public health authorities," the employer "acted reasonably when it determined that vaccinated employees are less likely to transmit COVID-19 than unvaccinated employees." *Rodrique v. Hearst Commc'ns, Inc.*, 126 F.4th 85, 91 (1st Cir. 2025). Again, an acute-care hospital is entitled to base its decisions on medical and scientific information, and it has an obligation to protect its patients and staff from reasonably preventable risks of infection and disease.

Without question, defendant was entitled to rely on the substantial evidence that COVID vaccines were safe and effective. And there is no reasonable dispute that defendant acted upon the best medical recommendations available at the time, and plaintiff has provided no evidence to suggest otherwise. *See Melino*, 127 F.4th at 397 ("[I]t is uncontroverted that BMC implemented its vaccine requirement based on the CDC's recommendations.").

In short, plaintiff has not raised a genuine dispute of material fact as to whether granting an exemption to the vaccine mandate would cause an undue hardship to defendant. The Court will therefore grant the motion for summary judgment.

## IV. <u>Conclusion</u>

For the foregoing reasons, plaintiff's motion to strike is DENIED, and defendant's motion for summary judgment is GRANTED.

**So Ordered.**

Dated: July 10, 2025

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
United States District Court Judge